# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **New Amsterdam, LLC,**<br><br>**Plaintiff,**<br><br>v.<br><br>**Osteopore International Pte Ltd.,**<br><br>**Defendant.** | Case No. 2:23-cv-0034<br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

New Amsterdam, LLC ("Plaintiff") hereby files this Original Complaint for Patent Infringement against Osteopore International Pte Ltd. ("Osteopore" or "Defendant"), and alleges, upon information and belief, as follows:

## THE PARTIES

1. New Amsterdam, LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 163 Bogerts Mill Road, Harrington Park, New Jersey 07640.

2. Upon information and belief, Defendant Osteopore International Pte Ltd. is a Singapore headquartered corporation. Further, and on information and belief, Defendant is an ASX company with a registered office in Australia. Further on information and belief, Defendant maintains its principal place of business located at 2 Tukang Innovation Grove #09-06/07, JTC MedTech Hub, Singapore 618305.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has at least specific personal jurisdiction over Osteopore because Osteopore has substantial contacts and conducts business in the State of Texas and in this District and has been infringing, contributing to the infringement of and/or actively inducing others to infringe claims of the '253 Patent (defined below) in Texas and elsewhere by virtue of its manufacture and importing of surgical strip fasteners, including through its distributor as advertised on its own website, 3D Aesthetic Solutions Inc. (https://www.osteopore.com/contact), located at Grand Medical Center 1, 520 S. Virgil Ave. St. 302, Los Angeles, CA 90020. Osteopore's contractual relationship with 3D Aesthetic Solutions Inc. to sell or at the least import and sell Osteopore's products within the United States is alone sufficient to establish minimum contacts with the United States. Osteopore, through its website, shows it retains control over directing its customers to its U.S. distributor for the Accused Instrumentalities (defined below). Furthermore, Osteopore has a non-exclusive distribution arrangement and contract with BioPlate, Inc., and specifically for distribution and sale of the Accused Products in Texas (https://www.aumanufacturing.com.au/osteopore-appoints-first-us-distributor).

5. Osteopore's website also provides information and videos for instruction for use of the Accused Instrumentalities and guidance to "check with our local representatives for more information" (https://www.osteopore.com/surgeons/craniotomy), suggesting it has U.S. representatives available for interested surgeons. Osteopore's website details Osteopore's activities as they are directed to the United States – "We are approved for use across several

regions and operate in over 20 countries and autonomous regions" which shows a map pinpointing the U.S. (https://www.osteopore.com/contact).



6. The "History" tab of Osteopore's website also details the importance of it obtaining FDA approval in 2006, the starting point that would allow future importing and selling the Accused Products in U.S. (https://www.osteopore.com/history).



7. Venue is proper in the Eastern District of Texas as to Defendant pursuant to at least 28 U.S.C. §§ 1391(b) and (c) and 1400(b), as well as under the "alien venue rule." *Brunette Machine Works, Ltd. v. Kockum Indus., Inc.,* 406 U.S. 706 (1972); *In re HTC Corp.,* 889 F.3d 1349 (Fed. Cir. 2018); Weatherford *Tech. v. Tesco Corp.,* 2018 WL 5315206 at *2-3 (E.D. Tex. Oct. 26, 2018). As noted above, Defendant is a foreign entity which maintains a regular and established business presence in the United States.

## BACKGROUND AND PATENTS-IN-SUIT

8. Plaintiff is the sole and exclusive owner, by assignment, of U.S. Patent Nos. 7,833,253B2 ("the '253 Patent") titled "Craniotomy Closures and Plugs," relating to surgical strip fasteners, particularly for use in reattaching a skull flap removed during brain surgery, and methods of reattaching the skull flap using the strip fasteners.

9. By operation of law, the '253 Patent was originally issued and exclusively vested to the named inventors, James Ralph and Thomas Troxell, as of the issue date of the '253 Patent. *See* 35 U.S.C. § 261; *Schwendimann v. Arkwright Advanced Coating, Inc.,* 959 F.3d 1065, 1072 (Fed. Cir. 2020); *Suppes v. Katti,* 710 Fed. Appx. 883, 887 (Fed. Cir. 2017); *Taylor v. Taylor Made Plastics, Inc.,* 565 Fed. Appx. 888, 889 (Fed. Cir. 2014). The inventors, in a written instrument dated January 25, 2006, and filed with the United States Patent and Trademark Office on March 1, 2006, assigned all rights, title, and interest in the '253 Patent to BioDynamics, LLC.

10. Formed in May 2004, BioDynamics, LLC is a medical design company dedicated to the development of new surgical implants, instruments and techniques that are reliable and less intrusive, that allow a surgeon to be more efficient, and which speed a patient's recovery. Their team of engineers has several decades of combined medical design experience and over 150 patents in the medical arena, ranging from orthopedic implants to biologics.

11. Thereafter, in a written instrument dated June 15, 2021, and filed with the United States Patent and Trademark Office on July 8, 2021, BioDynamics LLC assigned all rights, title, and interest in the '253 Patent to First Commerce Bank related to settling litigation claims.

12. Thereafter, in a written instrument dated September 28, 2021, and filed with the United States Patent and Trademark Office on November 17, 2021, First Commerce Bank assigned all rights, title, and interest in the '253 Patent to the Plaintiff New Amsterdam, LLC. As such, Plaintiff New Amsterdam, LLC has sole and exclusive standing to assert the '253 Patent and to bring these causes of action.

13. The '253 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

14. The inventions described and claimed in the '253 Patent were invented individually and independently by James Ralph and Thomas Troxell.

15. The '253 Patent includes numerous claims defining distinct inventions. As represented in Fig. 1, 1A, and 1B of the '253 Patent below, the inventions generally relate surgical strip fasteners, particularly for use in reattaching a skull flap removed during brain surgery, and methods of reattaching the skull flap using the strip fasteners. The invention also has to do with cranial plugs used to fill small openings in the cranium or the burr holes made to facilitate cutting out a skull flap. In a further aspect, the invention relates to surgical strip fasteners and cranial plugs and methods which enhance bone growth and the consequent healing of the skull flap and the skull.



16. The priority date of each of the '253 Patent is at least as early as January 17, 2006. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

17. Surgical access to the brain for neurosurgical procedures is created by removing a portion of the patient's skull, a procedure termed a craniotomy. From a surgeon's perspective, the

method of reattaching the bone flap must be safe, simple to use, be rapidly applied, permit emergent re-entry, not interfere with postoperative imaging studies, and provide an acceptably low profile. The ideal method would result in complete fusion of the bone flap to the native skull with no long-term evidence of prior surgery.

18. At the time of the inventions, typical instruments and methods of reattaching the skull flap included drilling a series of small holes in the edge of the skull and the edge of the flap. Sutures were then passed through the corresponding holes and the flap is secured back into the skull opening from which it was taken. Because the fit is not exact due to the material removed by the craniotome, the flap can sag and sit slightly below the surface of the skull resulting in a depressed area, which is obvious through the skin.

19. The inventors of the Asserted Patents conceived new surgical strip fasteners and cranial plugs for, and methods of, reattaching a skull flap in a skull opening. The fixation provided utilizing a strip fastener and cranial plugs and practicing the methods of the invention is secure and cosmetically acceptable. The strip fastener and plugs also can enhance bone growth in a manner which causes healing by means of bone-to-bone reattachment of the skull flap to the skull.

20. The '253 Patent is a pioneering patent, and has been cited as relevant prior art in 75 subsequent United States Patent Applications, including Applications Assigned to such technology leaders and academia as Boston Scientific, Stryker, Tyco Healthcare, Covidien, The Regents Of The University Of Michigan, Ossdsign, and Spinal Elements, Inc.

21. The claims of the '253 Patent were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration. *See, e.g., Genetics Institute,*

*LLC v. Novartis Vaccines and Diagnostics, Inc.*, 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent is not viewed as having 'never existed.' Much to the contrary, a patent does have value beyond its expiration date. For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

22. The expiration date of the '253 Patent is no earlier than August 28, 2027.

## OSTEOPORE'S INFRINGING PRODUCTS

23. Upon information and belief, Osteopore makes, sells, advertises, offers for sale, uses, or otherwise provides strip fasteners that utilize the '253 Patent's patented strip fastener designs. On information and belief, these strip fasteners are for reattaching a skull flap removed from a skull during brain surgery.

24. On information and belief, Osteopore has manufactured and sold products that infringe the '253 Patent and which include at least, but not limited to the Osteoplug in strip craniotomy format ("Accused Instrumentalities").

25. As shown in more detail below, Osteopore's strip fastener products include each and every limitation of at least, but not limited to, claims 1 and 12 of the '253 Patent and therefore literally infringe these claims. Plaintiff reserves the right to assert additional claims and to assert infringement under the doctrine of equivalents in light of information learned during discovery or in view of this Court's claim construction order.

26. Images Osteopore's strip fastener products found in the Osteoplug are shown below. Osteopore's strip fastener products include the required flexible strips with proper length and layout of tabs, screws, tacks and staples, all of the same fundamental components claimed in the '253 Patent.

27. For example, strip fasteners are shown in the following images from https://www.youtube.com/watch?v=QzniEcPnpKE, accessed February 2, 2022, hereinafter the "Osteo Video."





28. As another example, a strip fastener is shown in the following image from Osteoplug TYPE 3 (Nov2020)v4.pdf.



## COUNT I
## Infringement of U.S. Patent No. 7,833,253B2

29. Plaintiff incorporates the above paragraphs by reference.

30. Osteopore without authority, continues to make, use, sell, offer to sell, and/or import into the United States its Accused Instrumentalities as shown above.

31. Osteopore thus has infringed and continues to infringe at least claims 1 and 12 of the '253 Patent literally and/or under the doctrine of equivalents.

32. Osteopore has also actively induced and will continue to actively induce the infringement of at least one of claims 1 and 12 of the '253 Patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting infringement of others through activities such as creating and/or distributing videos of use such as the Osteo Video, brochures, manuals, instructional documents, and/or similar materials with instructions on creating, manufacturing, designing, assembling and/or implementing infringing products, with the specific intent to induce others to directly make, use, offer for sale, sell, and/or import into the United States products that fall within the scope of the '253 Patent, without license or authority from Plaintiff. On information and belief, Osteopore knows that the induced acts constitute infringement of the '253 Patent.

33. Osteopore individually, collectively, or through others or intermediaries, has contributorily infringed, and/or is contributorily infringing, in violation of 35 U.S.C. § 271(c), at least one claim of the '253 Patent by making, using, offering for sale, selling, and/or importing, material parts of the inventions claimed in the '253 Patent, which are not a staple article or commodity of commerce suitable for substantial non-infringing use, and knowing the accused parts to be especially made or especially adapted for use in an infringement of the '253 claims.

34. Osteopore has been on actual notice of the '253 Patent at least as early as the date it received service of the Original Complaint in this litigation. Osteopore's direct and indirect infringement of the '253 Patent has thus been committed with knowledge of the '253 Patent, making Osteopore liable for direct, indirect, and willful infringement.

35. Osteopore's infringement of the '253 Patent will continue to damage Plaintiff, causing irreparable harm for which there is no adequate remedy at law, unless it is enjoined by this Court.

36. Plaintiff has been damaged as a result of the infringing conduct by Osteopore alleged above. Thus, Osteopore is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

37. Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, New Amsterdam, LLC respectfully requests the Court enter judgment against Defendant as follows:

1. Declaring that Defendant has infringed the '253 Patent;

2. Awarding New Amsterdam, LLC its damages suffered because of Defendant's infringement of the '253 Patent;

3. Awarding New Amsterdam, LLC its costs, reasonable attorneys' fees, expenses, and interest;

4. An award to New Amsterdam, LLC of enhanced damages, up to and including trebling of Plaintiff's damages pursuant to 35 U.S.C. § 284 for Osteopore's willful infringement of the '253 Patent;

5. Granting a permanent injunction pursuant to 35 U.S.C. § 283, enjoining Defendants from further acts of infringement with respect to the '253 Patent;

6. Awarding New Amsterdam, LLC ongoing post-trial royalties for infringement of the non-expired '253 Patent; and

7. Granting New Amsterdam, LLC such further relief as the Court finds appropriate.

## JURY DEMAND

New Amsterdam, LLC demands trial by jury, under Fed. R. Civ. P. 38.

Dated: January 27, 2023

Respectfully Submitted

*/s/ Randall T. Garteiser*
M. Scott Fuller
   Texas Bar No. 24036607
   sfuller@ghiplaw.com
Randall Garteiser
   Texas Bar No. 24038912
   rgarteiser@ghiplaw.com
Christopher A. Honea
   Texas Bar No. 24059967
   chonea@ghiplaw.com
René A. Vazquez
   Virginia Bar No. 41988
   rvazquez@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420

**ATTORNEYS FOR PLAINTIFF**
**NEW AMSTERDAM, LLC**